# BARGE CONSTRUCTION CONTRACT

**THIS BARGE CONSTRUCTION CONTRACT** (the "Contract") is entered into as of this 2nd day of October, 2013 by and between **St. Johns Ship Building, Inc.,** a corporation organized and existing under the laws of the State of Florida (hereinafter called "Builder"), and **Sterling Equipment, Inc.,** a corporation organized and existing under the laws of the Commonwealth of Massachusetts, (hereinafter called "Owner").

For valuable consideration, it is mutually agreed between the Builder and the Owner that:

(a) The Builder shall construct, test and survey, launch, equip, complete, sell and deliver the Vessel to the Owner all in accordance with good shipbuilding and marine engineering practice; and

(b) The Owner shall purchase, take delivery of, and pay for the Vessel.

## ARTICLE 1
## SCOPE OF WORK

1.1 *Description of Vessel.* Builder, agrees to construct, test and survey, equip, and complete as designated in the attached Exhibits, free and clear from liens, claims, and encumbrances, one deck barge (hereinafter referred to as the "Vessel"), which is described on the attached Exhibits "A", "B" (herein referred to as "Specifications"), "C" (collectively referred to as the "Drawings") and "D" Collectively referred to as change orders, which shall be constructed in accordance with the documents referred to in each Exhibit (collectively referred to herein as the "Contract Documents"), all of which have concurrently been identified by the parties hereto and made a part hereof as if fully set forth herein.

1.2 *Work to Be Performed.* Except for any Owner-furnished equipment and plans as may be listed in the Specifications for the Vessel, Builder agrees to furnish all shop plans, plant, labor, tools, equipment and material necessary for the construction and delivery of the Vessel. The Vessel shall be constructed, surveyed, tested, and delivered in compliance with the applicable laws, rules, regulations, and requirements of the United States Coast Guard and the American Bureau of Shipping ("ABS ") or such other regulatory bodies as are set forth in the Contract Documents in force, without qualification, as of the date of this Contract, and certificates evidencing any required certifications shall be furnished to Owner by Builder at its cost and expense. Owner agrees to provide all available specifications and drawings related to the construction of the vessel and represents that the foregoing are appropriate for reliance by Builder in constructing the Vessel. The Vessel will be classed ABS *Unlimited All Ocean Services, Load line and Tonnage.*

1.3 *Contract Order of Precedence.* All general language or requirements contained in the Contract Documents for the Vessel and all other requirements inconsistent or in conflict with the provisions of this Contract are superseded by this Contract, it being the intent of the parties that



EXHIBIT
1

2

the provisions of this Contract shall prevail. If there is any conflict or inconsistency between the Drawings and the Specifications, the Specifications shall control.

## ARTICLE 2
## PRICE AND PAYMENT

**2.1** *Price.* Owner, in consideration of the performance on the part of the Builder, agrees to pay to Builder the Vessel Price for the Vessel of **$6,900,000.00** as listed on Exhibit "A" (referred to as the "Vessel Price") to be paid in accordance with the schedule of payments contained in Exhibit "A", plus the agreed price of any additional change orders or ABS required changes, including new regulation requirements not in force at the time of signing this Agreement and adjustments for bonus or penalty provisions in this Contract.

**2.2** *Payment Terms.* Builder shall submit an invoice for the initial payment and each pre-delivery installment payment hereunder as set forth on Exhibit "A" being paid as advances and not deposits, which payments shall be due and payable ten (10) days from the date of receipt of such invoice. Builder may, at its discretion, charge Owner interest at a rate of 12% per annum on any amount due hereunder, with such interest accruing from the date such amount is due until paid in full.

The sums due or refundable as a result of Owner approved modifications and changes shall be added to or deducted from the final installment payment, unless such modifications increase the price by 5% or more. If the price increase is 5% or more of the total purchase price then that increase shall be charged to Owner and payable on the next draw schedule payment due after the change order for that item is signed.

**2.3** *Payment Procedures* If the date on which any payment is due in accordance with the provisions of this Contract does not fall on a Banking Day, payment shall be made on the next Banking Day. Payment of sums due in accordance with the provisions of this Contract shall be made, in the case of payments to the Builder, by electronic transfer to the Builder's account and, in the case of payments to the Owner by electronic transfer to such bank as the Owner by notice to the Builder nominates to receive payments on its behalf. The cost of remitting payments shall be for the account of the payer. Payments made by either Party to the other under this Contract, and their receipt, shall not be deemed a waiver of any right or claim either Party may have against the other.

**2.4** *Purchase of Materials* All materials purchased by Owner directly or advanced by Owner for the purchase of materials for use on the project shall belong to Owner and should the Owner request, Builder shall execute title to or bill of sale to the Owner for said materials.

## ARTICLE 3
## TIME AND CONDITIONS OF DELIVERY

**3.1** *Stipulated Delivery Date.* The Vessel, completed in accordance with the Contract Documents, shall be delivered to Owner, on or before **July 1, 2014**, the date indicated on the attached Exhibit "A" for the Vessel (hereinafter called the "Stipulated Delivery Date"), or on such date or dates as may be required by reason of agreed changes in the Vessel, or by reason of specified delays resulting from "Force Majeure", as that term is defined in Article 6.

3

In the event that the Vessel is delivered earlier then the Stipulated Delivery Date plus all "force majeure" and change order day credits, (hereafter referred to as "Adjusted Delivery Date") then for each day delivered early, the Vessel Price shall be increased in accordance with the following table:

- Builder to receive $500 per day bonus for every day vessel is delivered before the stipulated delivery date of July 1, 2014.
- Builder to receive an additional $1,500 per day bonus for every day vessel is delivered before June 1, 2014

In the event that the Vessel is delivered later then the Stipulated Delivery Date plus all additional days allotted for "force majeure", (Stipulated delivery Date plus Change order day additions and "force majeure" days = "Adjusted Delivery Date") then for each day over that "Adjusted Delivery Date" period the vessel is not tendered for delivery, Builder to provide a credit to Owner as follows:

- Late Delivery: $500 per day penalty for each day late past the Stipulated delivery date with the exception of the addition of Permissible Delays as contained in Article 6 for delivery after the Stipulated Delivery date. This penalty amount is for any delivery up to the first 30 days late.
- An additional $1,500 per day penalty for each day late with exception of Permissible Delays as contained in Article 6 for delivery in excess of 30 days past Adjusted Delivery date.

**3.2 *Title*.** Except for material provided by the Owner in accordance with section 2.4, title to the Vessel and all materials and components incorporated or to be incorporated therein shall remain with Builder until construction is complete in accordance with this Contract. Title shall transfer to Owner upon tender of the Vessel for delivery as set forth below.

**3.3 *Delivery Location and Acceptance*.** Builder shall deliver the vessel at its expense, the Vessel to Owner at the location set forth on the attached Exhibit "A", (the "Delivery Location"). All costs and expenses of fleeting, operating and/or transporting the Vessel, after it has reached the Delivery Location and has been accepted by Owner, shall be the obligation of Owner. Owner shall execute a Delivery and Acceptance Certificate immediately prior to the time of delivery and acceptance of the Vessel by Owner, in the form of Exhibit "D".

Builder shall furnish, at its expense, to Owner on delivery of the Vessel a Bill of Sale and a Builder's Certificate, together with whatever other documents may be required by law or by any regulatory agency of the United States having relevant jurisdiction in order for Owner to document the Vessel in its name. Other than the documents referenced in the previous sentence, any expense in connection with the documentation of the Vessel shall be paid by Owner.

**3.4 *Delay in Acceptance*.** Should Owner fail to take delivery of the Vessel within thirty (30) days of Owner's receipt of Builder's final invoice for completion of the Vessel in accordance with the Contract Documents, Owner shall be in default of this Contract. Builder shall have the right to take all necessary steps to mitigate its damages, including but not limited to the right to

4

sue for specific performance of this Contract, or to retain any deposits or other payments made hereunder and to retain title to such Vessel and to sell the Vessel to a third party of Builder's sole choice, free of any claim of Owner at a price acceptable to Builder.

3.5 *Assurances.* At any time and upon Owner's request, Builder shall provide to Owner written information regarding the status of construction and reasonable assurance that construction and delivery of the Vessel will occur on or before the Stipulated Delivery Date or the "Adjusted Delivery Date", if applicable, in the form and requested content submitted by Owner.

## ARTICLE 4
## CHANGES IN THE DRAWINGS/SPECIFICATIONS

The Owner shall have the right at any time to request reasonable modifications or changes in the Specification and/or Plans and Drawings. The Owner shall request such modifications and/or changes in writing, giving sufficient particulars, documentation, and details fully to describe the modifications and/or changes requested.

Should the design or specifications be changed to meet ABS, Coast Guard, or any other governmental regulation(s)/law(s), Builder shall, as soon as possible after receipt of the written request for modifications or changes or notice of the foregoing change of design or specifications, give the Owner a written proposal of the consequences of implementing such modifications and/or changes. These consequences may include changes in the Vessel Price, Stipulated Delivery Date, or any other provisions of this Contract. If in the Builder's reasonable judgment, such modifications and/or changes will adversely affect the Builder's planning or program in relation to the Builder's other commitments, the Builder shall notify the Owner that it declines to give such a proposal for the requested modifications and/or changes or part thereof except as it relates to modifications to meet ABS, Coast Guard, or any other governmental regulation(s)/law(s).

The Builder shall use reasonable efforts to minimize the extra costs, delay or other negative impact on the Vessel or other factors caused by the Owner's request. The Builder's proposal shall be reasonable for such work.

On the basis of the Builder's proposal the Owner may elect in writing to agree to the necessary amendments to this Contract, in which case the Builder shall build the Vessel in accordance with this Contract so amended.

If Owner does not accept the Builder's notice or approval or if in the Owner's opinion the Builder's proposal for modifications and/or changes under this Clause is unreasonable, the Owner may, by giving notice to the Builder, order the Builder to proceed with the requested modifications and/or changes but the consequences of implementing such modifications and/or changes shall be decided in accordance with the dispute resolution hereinafter.

If the Owner elects not to continue with the request for modifications and/or changes, the Owner shall notify the Builder accordingly. If the Owner does not respond within seven (7)

5

running days after receipt of the Builder's notice, the Owner shall be deemed to have withdrawn the request for modifications and/or changes.

## ARTICLE 5
## INSPECTION BY OWNER'S REPRESENTATIVE

Builder will furnish reasonable space at its shipyard for the duly authorized representative(s) of Owner who shall have reasonable access to the work of Builder.

To enable the Owner's Representative and assistants to carry out their duties and inspect the work being done, the Owner's Representative and/or assistants shall have the right to inspect the Vessel throughout the period of the construction of the Vessel and until its delivery and acceptance.

The Owner's Representative and/or assistants shall have the right to attend all tests, trials and inspections on any parts of the Vessel whether or not installed. The Builder shall give the Owner reasonable notice in advance of all such tests, trials and inspections to enable the Owner's Representative and/or assistants to attend. If the Owner's Representative and/or assistants becomes aware of non-conformity of any aspect of the construction, material or workmanship arising out of such tests, trials and inspections he/they shall notify the Builder in writing as soon as possible. In the event of any dispute or disagreement under the Contract between the parties concerning the quality, skill or progress of Builder's work or materials hereunder, Owner may, at its sole option, engage an independent marine surveyor acceptable to Builder to resolve such dispute. If either party submits a dispute to the mutually agreed upon independent marine surveyor, the parties agree that the decision of the marine surveyor will be binding on both Builder and Owner. In the event the parties cannot mutually agree to an independent marine surveyor, such dispute may be submitted to arbitration by Owner or Builder in accordance with Section 13.6 of this Contract.

For the purposes of attending such inspections, tests and trials the Builder shall, at any time during working hours or at any other time when work is being performed, provide the Owner's Representative and/or assistants with unimpeded access to the Shipyard, Vessel, workshops, and anywhere else where work on or storage of items connected with the construction of the Vessel is being performed. The Builder shall use its best efforts to arrange similar access for inspection purposes to sub-contractor's premises during working hours or at any time when work is being performed.

Neither the Owner's Representatives' and/or assistants' inspection and/or attendance at any inspection, test or trial, nor the Owner's Representatives' and/or assistants' failure to notify the Builder of any non-conformity shall relieve the Builder from its obligations under this Contract or be deemed to be or construed as a waiver of any objection to, or any acceptance of, faulty design, construction, material and/or workmanship, or any admission that any materials or workmanship are of the standard required for due performance of this Contract.

6

# ARTICLE 6
## PERMISSIBLE DELAYS

The Stipulated Delivery Date shall be extended if any of the following events cause actual delay to the delivery of the Vessel:

6.1 *Force Majeure* events:
(1) acts of God;
(2) any government requisition, control, intervention, requirement or interference;
(3) threat or act of war, warlike operations, terrorism or the consequences thereof;
(4) riots, civil commotions, blockades or embargos;
(5) epidemics;
(6) earthquakes, landslides, floods, tidal waves, hurricanes.
    or extraordinary weather conditions including tropical storm and hurricane watches;
(7) strikes, lockouts or other industrial action, but only if of a general nature and not
    limited solely to the Builder and/or the sub-contractors or their employees;
(8) fire, accident, explosion (whether in the Shipyard or elsewhere);
(9) any interruption to the supply of public utilities to the Builder;
(10) any other cause of a similar nature to the above beyond the control of the Builder
    or its Sub-contractors;

6.2 *Other Events*

(1) Late delivery of, or delivery of, any defective Owner's Supplies;
(2) Delays due to modifications and changes in accordance with Article 4
    (Modifications and Changes);
(3) An actual or constructive total loss;

6.3 *Provided* that in respect of 6.1 and 6.2 above:

(1) such events were not caused by the error, neglect, act or omission of the Builder or
    its Sub-contractors; and
(2) were not, or could not reasonably have been, foreseen by the Builder at the date of
    the Contract; and
(3) the Builder shall have complied with Sub-clause 6.4 hereunder; and
(4) the Builder shall have made all reasonable efforts to avoid and minimize the
    effects such events have on the delivery of the Vessel.

6.4   The Builder shall notify the Owner within twenty (20) running days of when the Builder becomes aware of the occurrence of any event of delay on account of which the Builder asserts that it may have the right to claim an extension of the Stipulated Delivery Date. A failure to so notify may bar the Builder from claiming an extension to the Stipulated Delivery Date. The Builder shall also advise the Owner in writing (A) within two (2) running days of the ending of any event notified under this Clause that the event has ended, and (B) as soon as reasonably possible after (A), the length of extension of the Stipulated Delivery Date claimed by the Builder.

7

## ARTICLE 7
## WARRANTY

**7.1** *General.* During the Warranty Period, as hereinafter defined, Builder warrants that all labor furnished by Builder hereunder has been performed in a good and workmanlike manner and all materials specified and fabricated by Builder are free from defects. The Builder guarantees the Vessel against any defect(s) in the construction, material and/or workmanship on the part of the Builder or its sub contractors provided such defects are discovered within the Warranty Period after the date of delivery of the Vessel and notice thereof is given in writing to the Builder as soon as reasonably possible after the discovery thereof and latest [thirty (30)] running days after the expiry of the Warranty Period describing the defect(s) so far as reasonably practical. The Builder shall make good, at its own expense, any defect(s) or damage in the Vessel as a direct and immediate consequence of the defect(s) against which the Vessel is guaranteed under this Clause.

**7.2** *Warranty Period and Limitations.* Builder shall have no responsibility whatsoever with respect to any defect, claim or loss that does not develop or occur within one hundred eighty (180) days from the Delivery Date as specifically defined in this Article 7 (such period being hereinafter referred to as the "Warranty Period"). **NOTWITHSTANDING THE FOREGOING, BUILDER SHALL ONLY PROVIDE A WARRANTY FOR ITEMS THAT ARE NOT COVERED BY A SEPARATE MANUFACTURER'S WARRANTY. OWNER SHALL SEEK WARRANTY CLAIMS FOR WARRANTIED COMPONENTS OR MATERIALS THROUGH THE MANUFACTURER OF THE COMPONENT FOR ANY WARRANTY CLAIMS. THE ABOVE UNDERTAKINGS IN THIS ARTICLE 7 ARE IN LIEU OF ANY OTHER WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

The Warranty granted to Owner by Builder shall extend only to those claims reported in writing to Builder. For purposes solely of this Article 7, "Delivery Date" shall be defined as the earlier of the following: (i) fourteen (14) days after date of a final invoice from Builder upon completion of a Vessel, or (ii) the date of the actual delivery of a Vessel.

**7.3** *Warranty Claims.* In the event Owner notifies Builder of any claim covered under this Warranty, Builder, after review of the notice of claim and determination that it is covered under this limited warranty, shall make repairs and/or replacements at its option, at the Builder's shipyard; provided, however, that if it is not practical to have the Vessel proceed to such shipyard, Owner may, with prior written consent of Builder, have such repairs and/or replacements made at another shipyard or through a repair company acceptable to Builder, and, in such event, Builder shall reimburse Owner a sum equivalent to (i) one hundred ten (110%) percent of the amount Builder would have expended at its own shipyard at Builder's then prevailing rates, or (ii) the amount actually expended by Owner, whichever is less. In no event shall Builder be responsible for any sum in excess of the cost of the repairs and/or replacement of the warranty item as specified herein.

8

**7.4** *Consequential Damages.* IT IS UNDERSTOOD THAT BUILDER SHALL NOT BE LIABLE FOR ANY INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES SUSTAINED BY OWNER AFTER DELIVERY AND ACCEPTANCE OF THE VESSEL, OR LATE DELIVERY OF VESSEL, EXCEPT AS PROVIDED IN SECTION 3.1, OR TERMINATION OF THIS CONTRACT, AS A RESULT OF THE FAILURE OF ANY WORK OR MATERIAL TO MEET THE ABOVE STATED WARRANTIES OF BUILDER, INCLUDING, BUT NOT LIMITED TO, THOSE INCIDENTAL OR CONSEQUENTIAL DAMAGES WHICH MAY BE OF AN ECONOMIC OR COMMERCIAL NATURE SUCH AS LOSS OF REVENUE, CHARTER HIRE, OR PROFITS DUE TO DOWN TIME AS WELL AS ACTUAL LOSS OF THE VESSEL.

### ARTICLE 8
### RISK OF LOSS; PROPERTY DAMAGE TO VESSELS

Builder shall have the risk of loss and damage to the Vessel and all material, machinery and equipment, whether or not already attached to or installed in the Vessel during construction; provided, however, that with respect to items furnished by parties other than Builder, such risk of loss on the part of Builder shall not commence until said items have been received by Builder at its shipyard in Palatka, Florida. Delivery to and acceptance of the Vessel by Owner shall transfer to Owner risk of loss.

### ARTICLE 9
### INDEMNITY

Notwithstanding the provisions of Article 8 hereof, the following indemnities shall govern incidents of personal injury or death:

**9.1** *Builder's Indemnity Obligations.* Builder shall protect, defend, indemnify and hold harmless Owner and its officers, directors, shareholders, affiliates, employees, agents, assigns, predecessor companies, successor companies, affiliate companies, subsidiary companies, parent companies and their underwriters (hereinafter all collectively referred to as the "Owner Indemnitees") from any and all claims, demands and causes of action of every kind and character, including, but not limited to, causes of action at law, in equity, or in admiralty, and including all claims or causes of action brought under any state workers' compensation act and/or the United States Longshore and Harbor Workers' Compensation Act for personal injury (including all medical treatment necessary as a result) or death of employees or contract employees of Builder, sustained or alleged to have been sustained as a result of, related to, or incident to Builder's performance of its work for Owner hereunder. Builder shall defend any and all suits brought against any or all of the Owner Indemnitees on account of any such claims, injuries or damages, shall pay any such judgments rendered in such suits or claims, and shall reimburse and indemnify the Owner Indemnitees for all expenditures or expenses, including court costs and reasonable attorneys' fees, made or incurred by any of the Owner Indemnitees by reason of such suits, claims, injuries, death or damages or the defense thereof.

9

**9.2** *Owners Indemnity Obligations.* Owner shall protect, defend, indemnify and hold harmless Builder and its officers, directors, shareholders, affiliates, employees, agents, assigns, predecessor companies, successor companies, affiliate companies, subsidiary companies, parent companies, and their underwriters, (hereinafter referred to as the "Builder Indemnitees") **from any and all claims,** demands and causes of action of every kind and character, including, but not limited to, causes of action at law, in equity, or in admiralty, and including all claims or causes of action brought under any state workers' compensation act and/or the United States Longshore and Harbor Workers' Compensation Act **for personal injury** (including all medical treatment necessary as a result) **or death of employees or contract employees of Owner, sustained or alleged to have been sustained as a result of, related to, or incident to Builder's performance** of its work for Owner hereunder. Owner shall defend any and all suits brought against any or all of the Builder Indemnitees on account of any such claims, injuries or damages, **shall pay any such judgments rendered in such suits or claims, and shall reimburse and indemnify the Builder Indemnitees for all expenditures or expenses, including court costs and reasonable attorneys' fees,** made or incurred by any of the Builder Indemnitees by reason of such suits, claims, injuries, death or damages or the defense thereof.

**9.3** *Express Intentions of Parties.* It is the expressed intention of the parties hereto, both Builder and Owner, that the above indemnities are intended to indemnify and protect the parties from the consequences of the real or alleged negligence, whether such negligence be sole, joint or concurrent, strict liability, unseaworthiness of any Vessel, or any other fault, action or claim brought under any state workers' compensation act or the United States Longshore & Harbor Workers' Compensation Act, whether such fault, if any, be the sole or joint or concurrent fault and/or negligence of any of the particular indemnitees, and agree to support such indemnities with the insurance described in Section 10.

**9.4** *Third Parties.* Responsibility for any Third Party claims, as defined below, shall be determined under the United States General Maritime Law or Florida law. A "Third Party claim" is any claim other than a claim by a person or entity which is a Builder Indemnitee or Owner Indemnitee for matters covered under Sections 9.1 and 9.2 of this Contract.

**ARTICLE 10**
**INSURANCE**

**10.1** *Insurance.* At all times during performance under this Contract, Builder and Owner agree to each carry and maintain in force the following insurance coverages:

    (i)    Comprehensive General Liability coverage, with policy limits of not less than $5,000,000 per occurrence, with watercraft exclusion deleted, and supporting the indemnities provided for in Article 9.

    (ii)    Statutory workers' compensation coverage (including New York Workers' Compensation, Employers' Liability, and Longshore and Longshore Harbor Workers' Compensation Act coverage).

    (iii)    Maritime Employers' Liability with policy limits of not less than $5,000,000.

10

**10.2** *Additional Terms and Certificates of Insurance.* Owner and Builder shall finish each other with a Certificate of Insurance reflecting the above coverages and the expiration dates of each policy. Each party shall take steps to ensure that the other party shall be provided written notice by certified mail not less than 10 days prior to cancellation of any such coverages. Such policies shall name Owner Indemnitees and Builder Indemnitees as additional insureds, shall provide that each party's contractual liabilities hereunder, and any insurance obtained by any of the coverages, are primary to the extent of each party's Indemnitees; shall include an endorsement for coverage of each party's contractual liabilities assumed under this Contract; and shall include a waiver of subrogation to the extent of each party's contractual liabilities hereunder in favor of the respective party's Indemnitees. All deductibles, self-insured retentions and any lapses, deficiencies or absences of coverage under any of the above coverages and policies of insurance shall be the sole responsibility of the party who is required to indemnify and hold the other party harmless from same.

**10.3** *Builder's Risk Insurance.* From the time of first steel cutting or equivalent (or delivery of the Buyer's Supplies, whichever is earlier) until the Vessel is completed, delivered to and accepted by the Owner, the Builder shall (in the joint names (as assureds) of the Builder and the Owner) effect and maintain at no cost to the Owner, Builder's Risk Insurance for the Vessel and Owner's Supplies. Such Builder's Risk Insurance shall:
(i)  be provided by insurers reasonably acceptable to the Owner; and
(ii)  be on terms no less wide than Institute Clauses for Builder's Risk terms (1/6/88) including Institute War and Institute Strike Clauses ; and
(iii)  be in an amount not less than the aggregate of the payments made by the Owner to the Builder plus the value of the Owner's Supplies at the Shipyard.

If specifically requested by the Owner, the Builder shall increase the amount insured under the policy to cover the rebuilding costs of the Vessel or such other amount as the Owner may request. Any additional premium charged for this shall be paid by the Owner.

The Builder shall provide the Owner with copies of the insurance policy as placed.

The Owner shall notify the Builder of the value of any subsequent changes in the value of the Owner's Supplies for insurance purposes. Upon receipt of notice of change in value the Builder shall amend the insured value for the Owner's Supplies accordingly.

**10.4** *Allocation of Insurance Proceeds.* In the event that the Vessel is at any time prior to or at delivery damaged by any insured cause and provided such damage does not constitute an actual or constructive total loss of the Vessel, the Builder shall make good such damage and shall apply any amounts recovered under the insurance referred to in Sub-clause 10.3 to the costs of any repair or replacement, including repair or replacement of lost or damaged Owner's Supplies. Such damage shall be made good so as to comply with this Contract and all repairs shall be carried out in compliance with the requirements of the United States Coast Guard and the American Bureau of Shipping ("ABS ") Inland Rules as appropriate without qualification.

**10.5** *Actual or Constructive Total Loss.* Should the Vessel become an actual or constructive total loss from any insured cause:

11

(1) the Builder and the Owner may agree that a new vessel is built or the Vessel reconstructed in accordance with the terms of this Contract provided agreement is reached in writing to an Extension of the Stipulated Delivery Date and/or any other necessary amendment to the Contract, in which case any amounts recovered under the insurance referred to in Sub-clause 10.3 will be applied to the construction or reconstruction of the Vessel if appropriate; or

(2) If the Builder and Owner are unable to agree within a reasonable time on an extension to the Stipulated Delivery Date and/or any other necessary amendment to the Contract as provided herein, the Builder shall:

(i) promptly refund to the Owner the full amount of sums paid by the Owner to the Builder together with interest thereon at the per annum rate of *12% per annum* from the date of payment to the date of refund; and

(ii) make payment to the Owner of the insured value of the Owner's Supplies or alternatively, at the Builder's cost, deliver the Owner's Supplies to the Owner in undamaged condition.

Once all payments have been made by the Builder to the Owner, this Contract shall be deemed terminated and all future rights and obligations of each of the Parties to the other shall cease whereupon the guarantees provided under this Contract shall be returned.

### ARTICLE 11
### TAXES

Builder shall pay all local, state, and federal taxes, workers' compensation, social security, and old age benefits, of any nature, and other taxes, charges, assessments and contributions of any kind now or hereafter imposed upon, or with respect to, or measured by, materials and labor utilized in the construction of the Vessel hereunder, or the wages, salaries or other remunerations paid to persons employed in connection with the performance of this Contract, and Builder shall indemnify, defend, and hold Owner harmless from any and all liability and expenses by reason of Builder's failure to pay such taxes, charges, assessments, and contributions.

Notwithstanding the foregoing, if, after the date of this Contract, any federal, state or local government shall increase the rate of or shall enact any tax, fee, duty, impost or imposition that Builder is required to collect (whether due and/or collectible subsequent to performance and delivery hereunder), and which has the effect, either directly or indirectly, of increasing its cost of performance hereunder, Builder shall be entitled to charge Owner the amount of any such increase or new tax, fee, duty, impost or imposition which is directly attributable to its performance hereunder, except that no charge shall be made hereunder on account of, and Builder shall be entirely responsible for the payment of, any tax on the income of Builder, and ad valorem tax (whether assessed upon any Vessel under construction or upon other property) and any franchise or similar tax.

Notwithstanding any of the foregoing, any sales or use taxes that may be imposed upon the sale or use of the Vessel to be furnished hereunder, whether or not the law imposing such tax is now in effect, shall be in addition to the Contract Price herein specified and shall be paid by Owner. If any such tax is required to be paid by Builder, Owner shall reimburse Builder therefore upon presentation of invoice; provided, however, Builder shall not take any action that

12

would prevent Owner from recovering any sales or use tax paid by the Builder to the applicable taxing authority.

## ARTICLE 12
## DEFAULT

**12.1** *Builder's Default.* Builder shall be in default and in material breach of this Contract, and Owner may terminate this Contract on written notice to Builder and after Builder has been given forty-five [45] days to cure such default, which cure period does not affect the delivery payment terms of Article 3 herein, and in the event that:

    (1) Builder suspends work constructing the Vessel or substantial work is performed by Builder to construct the Vessel for a period of twenty one (21) days or greater;

    (2) Builder or any of their insurers or guarantors become insolvent or file a bankruptcy petition, a bankruptcy petition is filed against any of the foregoing parties, or the Builder makes a general assignment for the benefit of creditors.

    (3) A receiver or similar official is appointed for a substantial portion of the Builder's business, or the business is terminated, or Builder is liquidated or dissolved.

    (4) A default occurs under any other term or condition of this Contract not specifically referred to in this Article. This includes, without limitation, any failure or anticipated failure by Builder to obtain insurance, guarantees, and satisfy tax and indemnification liabilities and obligations as set forth in this Contract.

**12.2** *Owner's Termination.* If this Contract is terminated by Owner for Builder's default, Builder shall refund all sums paid by the Owner to Builder under this Contract plus interest thereon at the prime per annum interest rate published by the *Wall Street Journal* from the date of payment to the date of refund. The Builder shall also return the Owner's supplies, or if they cannot be returned, the Builder shall pay to the Owner the fair market value for such Owner's supplies.

**12.3** *Owner's Remedies.* In the event Owner terminates this Contract, Owner may, in addition to any other remedies it has under applicable law, elect to have a third party complete construction of the Vessel on the terms and conditions of Owner's choosing, and Builder shall cooperate with Owner and such a third party to facilitate construction of the Vessel with workmanlike dispatch, which includes, without limitation, furnishing adequate and reasonable space at its shipyard and granting access to Builder's equipment and supplies. If Owner selects this remedy then Builder shall be entitled to retain any and all monies paid to it by Owner. Builder shall protect Owner's benefit of the bargain in this Contract and indemnify Owner and hold it harmless for any additional expenses or liabilities incurred arising from completing construction of the Vessel post-termination, and Builder's obligation to indemnify Owner as set forth in Article 9 above shall survive termination of this Contract and extend to any party completing construction of the Vessel. Owner's failure to exercise its right to complete Vessel construction in accordance with this Section shall not operate as a waiver of such right nor as a failure of Owner to reasonably mitigate its damages.

13

**12.4** *Owner's Specific Performance.* It is acknowledged and agreed that the Vessel is unique, and that Owner may elect to sue Builder for specific performance of this Contract in the event of Builder's default or material breach. No provision in this Contract shall operate as a waiver of Owner's right to sue for specific performance of this Contract.

**12.5** *Owner's Default.* The Builder shall be entitled to terminate this Contract by notice in writing to the Owner in the event that:

(1)  The Owner fails to pay any sums due under this Contract for a period of twenty-one (21) Banking Days provided that the Builder thereafter gives the Owner at least five (5) Banking Days notice of its intention to terminate under this Clause, and within that period the Owner fails to remedy the breach; or

(2)  The Owner fails to take delivery of the Vessel tendered in accordance with this Contract.

**12.6** *Builder's Termination.* If this Contract is terminated by the Builder the Builder shall be entitled to retain the Owner's supplies together with any installments paid by the Owner and shall have the right and power either to complete or not to complete the Vessel as it deems fit but in any event shall sell the Vessel (either in its complete or incomplete form), including those Owner's supplies which are installed or have been utilized on board the Vessel, at the best price reasonably obtainable at a public or private sale on reasonable terms and conditions.

**(1)**  In the event of the sale of the Vessel in its complete form the proceeds of the sale received by the Builder shall be applied in the following order:
(a) ) to payment of all expenses incurred by the Builder in respect of the sale and otherwise incurred by the Builder as a result of the Owner's default;
(b) to payment of all unpaid installments of the Contract Price including any which would have been payable after the date of termination and interest on such installments at the prime per annum interest rate published by the *Wall Street Journal* from the respective due dates thereof to the date of application;

**(2)** In the event of the sale of the Vessel in its incomplete form the proceeds of sale received by the Builder shall be applied in the following order:
(a) to payment of all expenses incurred by the Builder in respect of the sale and otherwise incurred by the Builder as a result of the Owner's default;
(b) to payment of all unpaid installments of the Contract Price to the extent due but not yet paid at the date of termination and interest on such installments at the prime per annum interest rate published by the *Wall Street Journal* from the respective due dates thereof to the date of application;
(c) to payment of all costs of part construction of the Vessel less any paid installments and less any sums credited under (2) above;
(d) to payment of the Builder's reasonable net loss of profit caused by the Owner's default.

**(3)** In either the above events if the proceeds of sale exceed the sums to which such proceeds are to be applied as aforesaid the Builder shall promptly pay any such excess to the Owner. The

14

Builder shall at the same time either permit the Owner to remove the Owner's supplies which are not installed or utilized onboard the Vessel (if any), from the Shipyard for the account of the Owner, or give credit to the Owner for the full value thereof.

(4) If the proceeds of sale are insufficient to pay to the Builder the total amounts due from the Owner as aforesaid, the Builder may sell the Owner's supplies which are not installed or utilized on board the Vessel (if any) at the best price reasonably obtainable at a public auction or private sale on reasonable terms and conditions, applying the proceeds of such sale toward the unsatisfied amounts due from the Owner, and giving credit to the Owner for any excess.

(5) If the proceeds of sale are still insufficient to pay to the Builder the total amounts due from the Owner as aforesaid, the Owner shall pay to the Builder the deficiency balance.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

**13.1** *Patent Indemnity.* Builder agrees to indemnify, defend, and hold harmless Owner against claims of third parties for damage sustained by reason of the infringement of the patent rights with respect to any materials, processes, machinery, equipment, or hull forms selected and used by Builder in such work. Owner agrees to protect and hold harmless Builder against claims of third persons for damages sustained by reason of infringement of patent rights with respect to materials, designs, processes, machinery and equipment supplied or specifically required by Owner or required by any plans and specifications furnished by Owner.

**13.2** *Use of the Drawings/Specifications.* Any Specifications and Drawings of the Vessel furnished by Owner shall be and remain the property of the Owner.

**13.3** *Bankruptcy.* If either party hereto should become insolvent or should bankruptcy, or receivership proceedings be commenced by or against a party, or against a major part of its property, or if a party shall make an assignment for the benefit of its creditors, or shall admit in writing its inability to pay its debts generally as they become due, for the purpose of seeking a reorganization under the Federal Bankruptcy Laws, or otherwise, then in anyone or more of such events the other party to this Contract shall have the option to terminate this Contract for all intents and for all purposes by giving written notice of its intention so to do. Any termination of this Contract made pursuant to the provisions of this Article shall not relieve either party from any accrued obligations hereunder due and owing at the date of such termination.

**13.4** *Notices and Designated Representatives.* Notices required by this Contract to be given by Owner to Builder or to be given Owner by Builder shall be in writing and will be delivered in person or by confirmed email or facsimile transmission followed by U.S. Mail certified return receipt requested, or by overnight courier service providing evidence of receipt, to Builder or Owner, or the designated representative of either, as the case may be.

15

| | |
|---|---|
| Notices to Builder: | **St. Johns Ship Building, Inc.**<br>**Attn: Steven Ganoe and Bobby Barfield**<br>560 Stokes Landing Road<br>Palatka, FL 32177<br>Attn:   Bobby Barfield<br>Emails: bbarfield@stjohns-ship.com  sganoe@stjohns-ship.com |
| Notices to Owner: | **Sterling Equipment, Inc.**<br>555 South Street<br>Quincy, MA  02169<br>Attn:   Mark Quinn<br>Fax:    617-984-0442<br>Email: mark@sterlingequipment.com |

In all matters relating to this Contract except warranty claims, which are covered by Article 7, the parties will be represented by the following named persons: for the Owner, Mark Quinn and for the Builder, Steven Ganoe and Bobby Barfield.

Each party agrees that its named representative (or his designee) will be available for consultation during normal working hours. Both parties agree that no one other than the named individuals (or their designees) shall be considered as an agent of either party for making of admissions or giving of instructions. Except as herein authorized, no change or modifications to the Contract Documents shall be valid or binding on either party unless the same is in writing and signed by the above designated representatives (or his designees) of each party. Any change by the parties to this Contract must be agreed upon in writing in advance.

Any other person may be designated to act for either party upon written notice of such designation accomplished in accordance with the provisions of this paragraph.

13.5 *Headings.* The headings of the Articles, sections or other provisions have been inserted as a convenience for reference only, and are not to be considered in any construction or interpretation of this Contract.

13.6 *Applicable Law/Arbitration.*

A.     *Applicable Law.* This Contract shall be governed by the Laws of the State of Florida, U.S.A.

B.     *Arbitration.* Unless settled by an independent marine surveyor pursuant to Article 5 hereof, all claims, disputes and other matters in question arising out of or relating to this Contract or the breach thereof shall be submitted to, and settled by, an arbitrator in accordance with the current rules of the American Arbitration Association in effect in the State of Florida. In rendering a decision, the arbitrators shall make specific findings of fact and take into account all applicable judicial precedents and industry practice.

16

The decision of the arbitrators shall be binding and conclusive on all parties involved, and judgment upon the arbitrators' decision may be entered in the highest court of any forum, federal or state, having jurisdiction. No appeal thereof shall be made by the parties. The parties agree that the award of the arbitrator shall provide that the prevailing party shall be entitled to recover from the other party arbitration costs, reasonable attorneys' fees, and expenses in addition to any other relief that may be awarded.

**13.7 *Assignment*.**

A.   *By Owner.* This Contract and the benefits of any payments made hereunder may be assigned by Owner with written notification to Builder, provided that Owner guarantees the performance of all of its obligations hereunder by such assignees, and provided further that such assignment or transfers shall not in any way violate any law of the United States of America or any rule or regulation issued or promulgated by any department, agency or instrumentality of the United States government. Provided further, that to facilitate the necessary administrative functions of Builder, Owner shall agree to give Builder notice of the assignment in writing and within no less than ten (10) days prior to completion, acceptance and delivery of the Vessel. In the event that notice of such written assignment or transfer is not given to Builder within a reasonable time, Builder shall be entitled to any additional costs that it may incur as a result of late notice. Builder agrees to execute any documents required to effectuate any such assignment or transfer and the documentation of the completed Vessel.

B.   *By Builder.* This Contract shall not be assignable by Builder without the prior written consent of Owner. Builder may, however, subcontract all or part of the construction of the Vessel to Builder's affiliated companies without the consent of Owner, provided that Builder guarantees the performance of all of its obligations hereunder by such affiliated subcontractors.

**13.8 *Non-disclosure*.** Neither party shall disclose to any third party the terms and conditions of the Contract or the information received from the other party in either negotiating the contract or in the performance of the Contract. This obligation shall survive the completion of the Contract. The obligations of this provision shall not apply to any information that a disclosing party can show it possessed prior to its disclosure by such disclosing party, was or has become available to the public domain, or is subsequently provided to it by another party having the right to posses and disclose the information.

**13.9 *No Prior Agreements*.** The Contract Documents constitute the entire agreement, and supersedes all prior agreements and understandings, both written and oral, between the parties hereto. The invalidity or unenforceability of any phrase, sentence, clause or section in this Contract shall not affect the validity or enforceability of the remaining portions of this Contract, or any part thereof.

**13.10 *Successors and Assigns*.** This Agreement is binding on the Owner's and the Builder's successors and assignees.

17

**13.11** *Severability.* If any part of this Contract is not enforceable, the rest of the Contract may be enforced. Any consent or waiver under this Contract must be in writing.

**13.12.** *Counterparts.* This Agreement may be executed in as many counterparts as necessary or convenient, transmitted via facsimile or other electronic means (e.g. email pdf copies) and by the different parties on separate counterparts each of which, when so executed, shall be deemed an original but all such counterparts shall constitute but one and the same agreement.

**IN WITNESS WHEREOF,** the parties hereto have executed this Contract as of the day and year first above written.

BUILDER:
ST. JOHNS SHIP BUILDING, INC.

By: Steven Ganoe
As its: General President

OWNER:
STERLING EQUIPMENT, INC.

By: Bobby DeCrescenzo
By Its: President

18

# EXHIBIT "A"

### I.     DESCRIPTION OF VESSEL

1.   The Vessel shall be built in accordance with the following documents:
   a.   Specification Sheet dated (September 2011) 5000 Cu. Yd. Split Hull Hydraulic Dump Scow EXHIBIT "B"
   b.   Structural Arrangement Dwgs.  EXHIBIT "C" and others.

2.   The Vessel shall be built in accordance with the following regulatory body rules and regulations, with interim certificates issued for each except where otherwise noted.
   a.   The Vessels shall be built in compliance with the United States Coast Guard regulations and American Bureau of Shipping Unlimited All Ocean Services, Load line and Tonnage.

### II.    VESSEL PRICE

The Vessel Price is **SIX MILLION NINE HUNDRED THOUSAND and 00/100 U.S. Dollars (US $6,900,000.00)**, plus the agreed price of any additional change orders or ABS required changes, including new regulation requirements not in force at the time of signing this Agreement plus or minus any applicable bonus or penalty.

### III.   PAYMENT SCHEDULE

Builder will submit to Owner a Milestone Completion Certificate prior to invoicing for each of the below referenced eleven (11) milestones immediately upon completion of each specific Milestone. Owner will have seven (7) calendar days to respond to Builder with acceptance or rejection of that specific milestone. In the event of a dispute over a specific milestone completion, Owner and Builder will have the right to remedy under Article 5 of the Contract. In the event Owner does not respond within seven (7) calendar days of submittal of the Milestone Certificate, Builder can invoice for the Milestone at the end of the seven day period.

Sterling Equipment, Inc. shall reserve $1,116,920.00 USD for payment for steel materials to be purchased by Sterling Equipment, Inc. for the vessel. Builder shall provide requests for ordering materials and Sterling Equipment, Inc. will then issue the Purchase Orders and pay the invoices for the steel supplies for the vessel on its own account and credit terms and have the steel delivered to Builder. Sterling Equipment Inc. shall have legal title to that steel paid for as a secured creditor under Florida's Uniform Commercial Code. Upon completion of payment for all steel components by Sterling Equipment, Inc., any remaining reserve funds held by Sterling Equipment Inc. shall be released to Builder with the next payable draw on the attached schedule. Builder to give written notice of completion of ordering steel components for vessel to Owner.

| Payment Schedule Hopper Barge | Amount | Balance due |
|---|---|---|
| | | 6,900,000.00 |
| Steel Hold Back | $1,116,920.00 | 5,783,080.00 |
| 1. 10% Deposit | $690,000.00 | 5,093,080.00 |
| 2. Weld Midbody bottom plate | $393,080.00 | 4,700,000.00 |
| 3. Fabricate frames and bulkheads | $500000 | 4,200,000.00 |
| 4. Erect frames and bulkheads for mid-body section | $500000 | 3,700,000.00 |
| 5. Fabricate side deck and slope panels | $500000 | 3,200,000.00 |
| 6. Erect side, deck and slope panels | $500000 | 2,700,000.00 |
| 7. Fabricate bow and stern rakes | $500000 | 2,200,000.00 |
| 8. Erect bow and stern rakes | $450000 | 1,750,000.00 |
| 9. Installation of hydraulics | $450000 | 1,300,000.00 |
| 10. Painting of hull | $450000 | 850,000.00 |
| 11. Launch | $450000 | 400,000.00 |
| 12. Test and delivery | $400000 | 0.00 |

IV.   PLACE OF DELIVERY

The Vessels will be delivered at Builder's shipyard in **Palatka, Florida.**

V.   STIPULATED DELIVERY DATE

The Stipulated Delivery Date for the Vessel is **July 1, 2014.**

20

# EXHIBIT "B"

## SPECIFICATION SHEET
### Dated (September 2011)
### 5000 CU. YD. SPLIT HULL HYDRAULIC DUMP SCOW

**Principle Characteristics:**

| | |
|---|---|
| Length Overall: | 267' |
| Breadth: | 54' |
| Depth @ Midship: | 23' – 9" |
| Hopper Capacity: | 5,000 Cubic Yards |
| Loaded Draft: | 19'-8" (approximate) |
| Stern Type: | Raked w/ Skegs (2) |
| Skegs: | Double Plated |
| Bow Type: | Formed, Double Chine w/ 30" Radius |
| Hydraulic Cylinders: | 4 x 468 LT Cylinders w/ 6' stroke |
| Power Pack: | Diesel Driven Hydraulic |
| Deck Plate: | ½" |
| Side Plate: | ¾" |
| Bottom Plate: | ½" & ¾" |
| Hopper Slope Plate: | ¾" |
| Stern Log Plate: | ¾" |
| Head Log Plate: | ¾" |
| Class: | ABS Unlimited Offshore Service w/ Load Line & Tonnage |
| Operational Feature: | Remote Radio Control for Dumping & Closing Mechanism w/ Dead Engine Remote Dump Capability |
| Personnel: | Unmanned |
| Special Features: | 4 x 24" Overflow Pipe / Weir System w/ Block Valves |
| Centerline Seal: | Viking Material, Heavy Rubber |
| Fittings: | 6 x 12" Double Bitts |
| Towing Pads: | 14 x 48" Kevels |
| Man-Holes | 2 with Closed Chocks |
| Rub Bars: | Elevated Man-Holes |
| Hinge Pins: | 2 x Full Length Bars (6" x ¾") Each Side |
| Loading Side Hopper Combing: | 10" Diameter (to be confirmed – preliminary) |
| Calculated Material Density / Specific Gravity: | Not to exceed 3'-3" Height Above Deck Level |
| Coating: | 1.7SG |
| | Hull – Anti-fowling |
| | Topsides – 2 part system w/ non-skid on walking paths |
| | Internals – Float Coat |

21

**EXHIBIT "C"**

